

FILED

2004 MAY 17  PM 2: 39

CLER... ...
    ...

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ELIAS E. (LOU) ABUSAID JR.,
             Plaintiff,          Case No.: 8:03- CV-1938-T- 24MAP

v.

                                      CIVIL ACTION

CITY OF TAMPA, TAMPA POLICE
DEPARTMENT AND TWO UNKNOWN
MEMBERS OF DRUG ENFORCEMENT
ADMINISTRATION IN THEIR OFFICIAL and
INDIVIDUAL CAPACITY and the ESTATE OF
 ELI BLUMENFELD,
             Defendant (s).
_____/

## SECOND AMENDED COMPLAINT THROUGH ADDING SUPPLEMENTAL JURISDICTION ALLEGATIONS AND MODIFYING THE PRAYER FOR RELIEF BY ELIMINATING ANY CLAIM FOR MONEY AGAINST THE DRUG ENFORCEMENT ADMINISTRATOR

COMES NOW Plaintiff, ELIAS (LOU) ABUSAID JR, and sues Defendants,

CITY OF TAMPA, TAMPA POLICE , TWO UNKNOWN MEMBERS OF DRUG

ENFORCEMENT ADMINISTRATION in their OFFICIAL and INDIVIDUAL

CAPACITY and the Estate of ELI BLUMENFELD and alleges:

### I. PRELIMINARY STATEMENT

1.  Plaintiff brings this action for relief under, inter alia, 42 U.S.C. §§ 1983,

1988 . Plaintiff alleges that Defendants are, in violation of federal and state

law, have deprived him of his federally protected rights.

### II. JURISDICTION &VENUE

*56*

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court further has supplemental jurisdiction of the subject matter of this claim by virtue of 28. U.S.C. § 1367, as to all claims arising under the laws and Constitution of the State of Florida that are so related to the claims of which this Court has original jurisdiction and which form part of the same case or controversy.

3.   This claim arises out of acts undertaken and injuries suffered in this federal district and venue is proper pursuant to 28 U.S.C. § 1391.

## III. PARTIES

4.   Plaintiff, Elias (Lou) Abusaid Jr., is from Lebanese - American decent, citizen of the United States and a resident of Florida.

5.   Defendant, City of Tampa,( herein after the CITY ) is incorporated as a Florida municipality and Defendant Tampa Police Department (herein after the POLICE) is a part of that municipality, both are subject  to suit, and two unknown persons(herein after the AGENTS) are a agent's for the Drug enforcement Administration acting under the color of law and with the POLICE.

6.   Defendant, Eli Blumenfeld estate is a private actor whom has been converted to a CITY actor is subject to suit.

## IV. STATEMENT OF FACTS

-2-

7.   Plaintiff, is a 41 year old white male, whom currently supports three minor children on his earnings as a small business owner, a job which he has held for over eleven years. Currently the Plaintiff, owns and operates a retail store, record and tape, and restaurant with a disc jockey present, which is located in the City of Tampa.

8.   Plaintiff, business (s) are located at 1202 - 1204 North Franklin Street, Tampa, Florida 33602, furthermore, the Plaintiff operates his business after the operating hours of bars and cocktail lounges since July 20, 2000.

9. During his employment at the above mentioned location, Plaintiff, Elias (Lou) Abusaid Jr., was continually subjected to numerous violations of his federally protected rights, insults, harassment and inter alia by the POLICE whom where acting under the full color of the law.

V.      POLICE  HISTORY OF WIDE-SPREAD PRACTICE
        "POLICY"OF ABUSE OF PLAINTIFF'S FEDERAL RIGHTS

10.   In the end of July , 2000, the POLICE entered the Plaintiff's business without warrant nor consent . The Officer's stated to the Plaintiff that they had received a complaint that alcoholic beverages where being sold inside the building. There where no arrest made that night, due to the alleged complaint lacked any merit, however, all of the Plaintiff's customer left and Plaintiff suffered a loss of business.                              -3-

11.  On August 12, 2000, the POLICE entered the Plaintiff's business with out warrant nor consent , the officer's arrested the Plaintiff for an alleged violation of a city ordinance, accomplishing the foregoing in a "rude and insulting manner" threatened to arrest employee's or anyone making inquiry into the nature of their presence and summarily closing the Plaintiff's business and threatening the Plaintiff with future arrests if he re-opened the business.

12.  On August 25, 2000, the POLICE again entered the Plaintiff's business without warrant nor consent , the officer's arrested the Plaintiff for an alleged violation of a city ordinance, accomplishing the foregoing in a "rude and insulting manner" threatened to arrest employee's or anyone making inquiry into the nature of their presence and summarily closing the Plaintiff's business and threatening the Plaintiff with future arrests if he re-opened the business.

13.  On August 26, 2000, the POLICE again entered the Plaintiff's business without warrant nor consent , the officer's arrested the Plaintiff for an alleged violation of a city ordinance, accomplishing the foregoing in a "rude and insulting manner" threatened to arrest employee's or anyone making inquiry into the nature of their presence and summarily closing the Plaintiff's business and threatening the Plaintiff with future arrests if he re-opened the business.

14.  On August 27, 2000, the POLICE again entered the Plaintiff's business

-4-

without warrant nor consent , the officer's arrested the Plaintiff for an alleged violation of a city ordinance, accomplishing the foregoing in a "rude and insulting manner" threatened to arrest employee's or anyone making inquiry into the nature of their presence and summarily closing the Plaintiff's business, impounding all of the Plaintiff's cash revenue for that night, the Plaintiff's lap top computer and threatening that the next time they return, they would also confiscate the employee's cash as well, with the promise of future arrests if the Plaintiff re-opened his business.

15.     During the late month of August and July 2000, the POLICE would intentionally block traffic with their cars, not allowing motorists to pass nor enter the Plaintiff's business, causing the Plaintiff to suffer a loss of business.

16.     Plaintiff complained to the POLICE department of internal affairs, at which time the Plaintiff was instructed to ask the officers to stop blocking the street.

17.     On or about February 16, 2002, acting under the color of the law, Corporal Joseph F. Kieras unlawfully searched, handcuffed and detained the Plaintiff in his police car for about one hour, due to a expired city business tax receipt. Plaintiff presented current Hillsborough County license to the Corporal, but to no avail, the Corporal insisted that the Plaintiff close his business . Plaintiff refused to close and was then released without charge.

18.    That same night the Plaintiff suffered a loss of business, due to that above-described actions of Corporal Kieras was made in full view of the Plaintiff's customers and employee's. The Corporal action where not justified in anyway.

19.    During the months of February, March, April, May , June, July, August, September and October, 2002.  Corporal Kieras and Officer Mark W. Vasquez, both acting under the color of law, would harass, search and intimidate the Plaintiff's customers and employee's on a regular and on going basis.

20.    Both of the above named city officers stated to the Plaintiff that their action were intentional and deliberate with the hope of causing the Plaintiff great economical disaster and loss of business.

21.    On October 20, 2002, acting under the color of law , Officer Mark W. Vasquez arrested the Plaintiff for a expired business tax receipt. Soonafter the Officer demanded that the Plaintiff close his business. Plaintiff refused to close and instructed his employee to lock the front gate.

22.    That same day Officer Mark W. Vasquez physically and unlawfully remove the keys from the Plaintiff's employee and unlocked the front gate, entered the premises, ignoring the Plaintiff oral notice's of trespassing. Falsely arrested the Plaintiff for obstruction of justice.

23.    Officer Vasquez then instructed to the Plaintiff's employee's that the

-6-

business was closed, soonafter, Officer Vasquez illegally began a search of the premise without warrant nor consent.

24.    Plaintiff reported Officer Vasquez's criminal actions to the POLICE Department internal affairs, Plaintiff informed the department that he wished to criminal prosecute Officer Vasquez for break in and entering, trespassing upon the Plaintiff's property, but to no avail, that Department instructed the Plaintiff to talk to their attorney Mr. Kirby Rainsberger.

25. On or about early May, 2003, Plaintiff reported to the Tampa Police Internal Affairs that Police Officers where parked across the street from his business whom where intentionally blinding the Plaintiff, plaintiff's employee's and patrons with their automobile bright lights for hours at a time.

26. Internal affairs instructed the Plaintiff, that the next time the police cars failed to dim their automobile lights, to do the following :

a.  Walk across the street and to enter the parking lot.

b.  Approach the police car (s).

c. Ask the Officer to please dim the lights, however, if the Officer failed to dim his/her lights ;

d.  Call that Officers shift commander and report the mis-conduct.

27. On August 30, 2003 about 2:00 am, one of the Plaintiff's patrons

-7-

informed Elias (Lou) Abusaid Jr., that he had just been stopped by one of the police

cars across the street from the Plaintiff business at which time the following took

place:

a.   Officer stop the patron because the patrons license plate information was
stating that the registered owners drivers license was suspended.

b. Officer then conducted a search of the patrons motor vehicle, without
warrant nor consent from the owner of the motor vehicle.

c.   Officer had already established that the owner drivers license was not
suspended, however, because the patron failed to have that drivers license in
his possession, the patron was understandably cited for the violation.

d.   Officer informed the patron, that he would be jailed, if he was
seen operating his motor vehicle.

e.   Patron was then informed that the Plaintiff's business was being watched
and so where the Plaintiff's patrons.

28. On August 30, 2003, Plaintiff, employee's and patrons were
intentionally blinded by bright lights for hours at a time from a police auto
mobile from across the street. (Eli Blumenfelds parking lot)

29. The source of the bright lights originated from Tampa Police car number

248.

30.   Officer T. Mayo was operating police car number 248.

31. Plaintiff, following the instructions described in paragraph 26 (a) through
(c).

32.   Officer T. Mayo in a rude manner informed the Plaintiff that he refused

-8-

to dim his lights.

33. Plaintiff, immediately reported Officer T. Mayo misconduct to Lt. Sherrie Bouknecht.

34. Lt. Sherrie Bouknecht informed Plaintiff that she would take action about Officer T. Mayo's misconduct.

35. Plaintiff soon after drove his own motor vehicle around the area with a passenger.

36. When Plaintiff returned back to his business, Plaintiff noticed that Officer Mayo had even parked his car closer to the corner of the parking lot, with the front of his car not more then thirty five feet away from the Plaintiff's business and was still intentionally blinding the Plaintiff's employee with his bright lights.

37. Officer Mayo then drove his car across the streetwalk and street with his blue and red lights flashing to traffic stop the Plaintiff.

38. Officer Mayo then blocked almost both of the street lane with his car.

39. Officer Mayo with a can of pepper spray in hand, approached the Plaintiff and asked for his driving information.

40. Plaintiff questioned the stop and then was informed by the Officer, that the Plaintiff's tag light was out.

41. Plaintiff was cited for a violation of improper tag light, inter alia.

42. Plaintiff's motor vehicle is a 1984 Porsche 944 model.

43. Plaintiff motor vehicle has no obvious tag light assemble.

44. Plaintiff can not install a tag light because there is no where to plug that light at that time.

45. Officer Mayo actions was in retaliation of the Plaintiff reporting his misconduct to his commanding Officer.

46. Officer Mayo then ordered the Plaintiff to move his car away from the front of the Plaintiff's business.

47. Soonafter, because of Officer Mayo's above described actions, the bulk of the Plaintiff's patrons left the Plaintiff's business with the Plaintiff suffering a huge loss of business.

48. Many of the patrons automobile (s) were issued parking tickets by another officer whom was also using Eli Blumenfeld's parking lot as base camp.

49. Plaintiff then parked his car across the street in a empty parking lot.

50. About twenty (20) minutes later Officer Mayo walked across the street from the above described parking lot that he has been occupying, to inform the Plaintiff that the parking lot that he just parked his car, was the property of the city and to remove the car.

51. Plaintiff abided to the Officers verbal notice.

52. Plaintiff at the same time , verbally thanked Officer Mayo for dimming his lights.

53. Officer Mayo stated back to the Plaintiff that his "light where not dimmed!" nor was he going to dim the lights.

54. Plaintiff verbally informed Officer Mayo that he would report Officer Mayo unprofessional conduct to his commanding officer.

55. Officer Mayo replied that he had already spoken to Lt. Bouknecht and welcomed the Plaintiff to call the Lt. Bouknecht again.

56. That same day at about 8:00 a.m., Plaintiff reported Officer Mayo's conduct to Lt. Cole ,via- telephone.

57. Lt Cole stated to the Plaintiff that he would pass the Plaintiff's verbal report to Lt. Bouknecht, since the officer misconducted occurred on her watch.

58. On August 31, 2003, at about 1:45 a.m. the Plaintiff was informed by his employee that Officer Mayo had just cited him with a ticket and then throw his driver license on the street /dirt.

59. Plaintiff immediately reported the incident between Officer Mayo and Plaintiff's employee to Lt. Bouknecht via -telephone.

60. Lt. Bouknecht informed the Plaintiff that she had spoken to Officer Mayo and instructed him not to use his bright light upon the Plaintiff , his employee's and

-11-

patrons.

61. Plaintiff then brought Lt. Boucknecht up to date on the events that took place described in paragraphs 53 through 58.

62. Lt. Boucknecht denied that she ever directly spoke to Officer Mayo the previous morning about his negligent actions upon the Plaintiff and his personal.

63. Lt. Boucknecht also informed the Plaintiff that the owner of the parking lot had given their permission for the Officers to use the lot.

64. Above mentioned parking lot is currently owned by Eli Blumenfield.

65. Mr. Blumenfield past away about four month ago from health complication.

66. On September 2, 2003, Plaintiff spoke to a Patricia Mc Donough via-telephone whom is the current assigned trustee for Mr. Blumenfield estate.

67. Ms. Mc Donough claimed that she was not aware of any agreements between the CITY and Mr. Blumenfield , that pertained to the use of the property "parking lot" .

68. On that same date Plaintiff also spoke to Mr. Lance Cambell via- telephone Mr. Cambell stated to the Plaintiff that he not made any agreements with the CITY POLICE to use Mr. Blumenfield's parking. "Mr. Cambell owns parking rights."

69. Plaintiff also filed a verbal complaint against Officer Mayo to the Tampa

Police Internal Affairs Department.

70. On September 6, 2003, Plaintiff spoke via-telephone to a Captain Rademaker.

71. The Captain informed the Plaintiff he would investigate Officers Mayo's misconduct complaint, but still would continue to use the parking lot.

72. On September 6, 2003, at about 6:00 a.m., Officer Mayo and a second Officer returned to the same parking lot across the street, with Officer Mayo car again pointing in the direction of the Plaintiff's business, second Officer then begun running a licence plate investigation on all the patrons parked cars on Royal Street and Harrison Street, citing many of the cars with parking tickets, and also stepping out of his car at times. To look inside the parked cars.

73. Again many of the Plaintiff's patrons, understandable being upset that their cars where being cited with parking violation tickets in the early a.m. hours left the Plaintiff's business to avoid being ticketed themselfs.

74. Large percentage of the customers stated to the Plaintiff that they would not return to the Plaintiff business, due to the Police actions.

75. Plaintiff again suffered a large loss of business.

76. On September 7, 2003 at about 2:30 a.m. Plaintiff with the help of an amateur cameraman , filmed twenty (20) plus parking violations on Tampa Street,

-13-

Cass Street and Franklin Street, furthermore, the streets described are located only two city blocks away from the Plaintiffs business.

77.   The bulk of the automobiles that were parked in the described area, where not the Plaintiff's patrons, but patrons of another night club.

78.   The patrons cars from the other night club where not issued any parking tickets at all, even though there where many automobiles parked on the sidewalk on Franklin Street that ranged from the intersections of Cass Street and Tyler Street.

79.   Later that same morning at about 3:30 a.m. Officer Mayo again was parked in Mr. Blumenfeld lot and in the same position as described earlier. "Front of the car aimed directly at Plaintiff's front door"

80.   Officer Mayo choosing to ignore the parking violation just two blocks away from him, dedicated his time to watch the Plaintiff's business front door and write reports.

81.   On that same morning, Officer Mayo threaten to arrest the Plaintiff's employee for trespassing if he entered Mr. Blumenfields parking lot. This incident was recorded on video film with officer Mayo knowledge.

82.   That same morning at about 6:10 a.m. Officer Mayo was joined by six (6) other Tampa Police Officers in Mr. Blumenfields parking lot, soonafter, one of the officers again proceeded in issuing parking tickets that lacked any merit to the

-14-

Plaintiff, the Plaintiff's employee's and patrons automobiles, this too was recorded on video film .

83.   Again many of the Plaintiff's patron feeling uncomfortable about a gang of police officers hanging out in Mr. Blumenfield parking lot, whom where clearly enjoying watching other officers of the same group issuing multiple parking tickets upon the Plaintiff' and his employee's and patrons automobiles

84.   Again many of the Plaintiff's patrons, understandable being upset that their cars where being cited with parking violation tickets in the early a.m. hours left the Plaintiff's business to avoid being ticketed themselfs.

85.   A large percent of this customers stated to the Plaintiff that they would not return to the Plaintiff business, due to the Police actions.

86.   Plaintiff again suffered a large loss of business.

87.   At about 6:40 a.m.,that same morning Plaintiff  immediately spoke to Lt. Cole via - telephone.

88.   Plaintiff reported the actions described in paragraphs 79 through 84,  Lt. Cole  explain to the Plaintiff that those Officers where not  part of his 6:30 a.m. shift but the end of  Lt. Bouknecht shift, furthermore, he believed that Lt. Bouknecht was still present, at  which  time Lt. Cole was able to relay the plaintiff's verbal report to Lt. Bouknecht .

89.  Lt. Bouknecht reply to Lt. Cole whom was still on the telephone line with the Plaintiff, stated that the Officers on Mr. Blumenfields property where filling out there reports.

90.  On September 8, 2003, Plaintiff spoke to Bob Waltuch, Esq. via - telephone.

91.  Bob Waltuch is an attorney at law and represents Bank of America and the estate of Eli Blumenfeld.

92.  Mr. Waltuch informed the Plaintiff that no agreement has ever been made with the Tampa Police department, for the police to use Mr. Blumenfield's parking lot.

93.  Plaintiff informed Mr. Waltuch of some of above described use of Mr. Blumenfeld parking lot, by the city police.

94.  Plaintiff also informed Mr. Waltuch that he would be filing this complaint alleging civil rights violation against the City of Tampa.

95.  Plaintiff also explained to Mr. Waltuch that the Tampa Police would continue to use Mr Blumenfield parking lot until they received notice from the owner / trustee or attorney, not to use that lot.

96.  Mr. Waltuch stated that he would not write a letter to the Tampa Police Department nor make any attempts to contact the POLICE to stop using the lot.

-16-

Thereby, converting Mr. Blumenfeld's from a private actor to CITY actor, due to the fact that he had just been put on notice by the Plaintiff.

97.    Mr. Waltuch above described actions at this time must be interpreted as a willingness to conspire with the Tampa Police to violate the Plaintiff's federally protected rights, therefore converting a private actor into a governmental CITY actor.

98.    On October 25, 2003, this Court granted the CITY'S Motion to Dismiss the original complaint and the Plaintiff's request for injunctive relief.

99.    On November 1, 2003, a officer believe to be Officer Mayo has his car parked in Mr. Blumfeld's parking lot and is observed by the employee's that he is video taping them as they are enter the building.

100.    On November 8, 2003, Officers are searching a white pick up truck at about 3:30 in the morning with blue and red lights flashing. The truck was stop after it drove pass the Plaintiff's business.

101.    To date, The Plaintiff has personally observed Police cars slowing down their vehicle around the vicinity of the Plaintiff business, using their spot lights to peer inside the Plaintiff's customers cars on a regular and on going basis.

102.    On November 9, 2003, at about 5:20 a.m.,the Plaintiff received a oral report from his employee that a customer was complaining that their where two

-17-

individuals inside the premise, whom where attempting to force him to purchase a

a control substances.

103.   The customers name is Mark E. Folson (herein after FOLSON).

104.  Soonafter, FOLSON filed his complaint, two of the Plaintiffs

employee's immediately began their search to investigate  FOLSON'S complaint.

105.   At about 5:35a.m. the two unknown males where observed on foot

near a newer green    B.M.W. (Series 700) on Tampa Street. They both seemed

confused and agitated, they began walking towards the Plaintiff's business  and then

changed their direction and began walking towards a parked POLICE car.

106.  Just prior to the above mentioned taken place, The Plaintiff was using

his hand held spot light, when he pointed it into the direction of the POLICE internal

affairs building, (which is directly across the street from the Plaintiff's rental

building) he observed a person dive to the floor so that person would not be exposed

and out of the range to the Plaintiff's field of vision.

107.  Plaintiff then walked up to the POLICE building and used his spot light

to observed what exactly was going on at the second floor of that building, at  which

time he observed a camcorder behind a clear window, which was  mounted on a tri

pod pointing directly at the Plaintiff's business.

108.  Almost immediately Police cars  began approaching the Plaintiff's

-18-

building, with two of them parking on Mr. Blumfeld's parking lot. Soon after, two officers parked their cars directly in front of the Plaintiff's business, Officer Leavy whom was accompanied by Officer Peck stepped out of their cars and Officer Leavy stated to the Plaintiff that he had to go inside and arrest somebody. He accomplished the foregoing in a quick and rapid fashion without giving the Plaintiff any time to object or inspect a warrant.

109.     Plaintiff immediately followed Officer Peck whom was following Officer Leavy , at that same time both AGENTS followed Plaintiff.

110.    Agents then instructed Officer Leavy to arrest Mr. Folson , Mr. Folson was handcuffed and taken outside the building, at which time he was quickly transported by one of the many POLICE cars in front of the business.

111.   Plaintiff then  was informed  by his employee Mr. Gocay, that the two white males whom were presently in the company of the many uniformed officers where the individuals whom were trying to force Mr. Folson to purchase drugs for them or they would have Mr. Folson's state probation officer file an affidavit of violation, thereby causing him a loss of liberty under false pretenses.

112.   One of the males (AGENT) confronted Mr. Gocay about the subject matter that he had just described to the Plaintiff and insisted that Mr. Folson statements lacked any merit. Then that same AGENT addressed his attention to the

-19-

Plaintiff demanding to know why the Plaintiff aimed his spot light on the POLICE building.

113.    That same morning at about 6:30 a.m. four (4) POLICE officers returned to the Plaintiff's business and demanded that Mr. Gocay step outside, soonafter, Mr. Gocay stepped outside. Officer Mayo then demanded that Mr. Gocay produce his identification. Mr Gocay complied with Officer Mayo's demand . Officer Mayo wrote up Mr. Gocay's information and asked Mr. Gocay for his telephone number. As soon as Officer Mayo wrote down Mr. Gocay's telephone number, all four officers drove away.

114.   At no time did the POLICE officers state why they wanted Mr. Gocay' s personal information.

115.   All of the described in paragraphs 108 through 113 took place in full view of the Plaintiff's customers and employee's.

116.   Plaintiff closed early that day, due to that many of his customers left.

117.   On November 10, 2003, the Plaintiff attended a federal District Court hearing at 4:30 p.m. in Courtroom 12 A.

118.   Mr. FOLSON was also present in the Courtroom as a federal Defendant, before the Court.  Mr. FOLSON stood before the court for an obstruction of justice charge. The United States Attorney entered an oral Motion to withdraw the Complaint

against Mr. FOLSON. Judge Wilson granted the Motion and informed Mr.FOLSON that he was free to go.

119.   On November 11, 2003, Plaintiff, filed an oral complaint and criminal activity report to Mr. Dan Gordon of the Drug Enforcement Administration. Mr. Gordon was in his office catching up on unfinished business. Plaintiff put Mr. Gordon on notice that his business was not open to the immediate public nor has it every been, nor has the Plaintiff ever signed a release of waiver of his federal rights with any governmentally entities, to allow any law-enforcement agencies to enter without consent or warrant. Furthermore, that two unknown AGENTS extorted FOLSON in his business on November 9, 2003, with the threat of loss of liberty if FOLSON refused to commit a felony purchase of a control substance. Mr.Gordon under-standable being upset about the Plaintiffs allegations asked if the Plaintiff knew the names of the AGENTS. Plaintiff answer was no, however, the Plaintiff explained to Mr. Gordon that FOLSON was listed as an inmate in the Hillsborough County jail and was scheduled to be transported by the U.S. Marshals office. The Sheriff's agent informed the Plaintiff that FOLSON was a being detained by the his agency (DEA) Furthermore, that the Plaintiff was present at  FOLSON  federal hearing and that the U.S. Assistant Attorney motioned the District Court to withdraw the complaint.

120.    Plaintiff Elias (Lou) Abusaid Jr., has suffered damages, including economic damages, emotional distress, costs, and court fees.

## VI. CAUSE OF ACTION

## COUNT 1. REQUEST FOR RELIEF

121. Plaintiff incorporates by reference the allegations in Paragraphs 1- 119 above as set forth verbatim herein.

122. Plaintiff request relief from this Honorable Court from the harassment by a pattern of law enforcement intentionally designed to cause economic chaos and financial disaster to the Plaintiff's business

Specifically, the Defendants :

a.  Police cars parked in Eli Blumenfeld's parking lot which is located in the immediate vicinity of the Plaintiff's business.

b.  Blinding the Plaintiff, Plaintiff's employee's and patron with bright light for hours at a time.

c.  City Officers stopping and checking identification of patrons and employees exiting or seeking to enter the Plaintiff's business.

d.  Officer Mayo throwing employee's identification card on the dirt.

e.  Other Police cars parked in the driveways, and streets at frequent and continuing intervals with red and blue lights flashing for hours at a time.

f.  Selective enforcement of parking ticket violations upon the Plaintiff, Plaintiff's employee(s) and patrons with many of the parking violation issued are without any merit.

g. Mr. Blumenfeld's trustee / personal representatives allowing city agents to conspire to violate the Plaintiff's rights, by using Mr. Blumenfelds lot.

h.   POLICE officer entering Plaintiff business without warrant nor consent.

i.   AGENTS threatening to arrest Plaintiff's customers if they fail to purchase street drugs.

j.   POLICE and AGENTS falsely arresting and charging Plaintiff customers.

123.   In addition, pursuant to 42 U.S.C.§ 1983 Plaintiff is entitled to compensation for the damages including punitive damages See. Smith v. Wade, 103 S. Ct. 1625 (1983). Due to suffering he has sustained as a result of the unconstitutional acts of the Defendants and in pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert his and others' constitutional rights.

WHEREFORE, Plaintiff Elias (Lou) Abusaid Jr., prays:

a.      For this Court to preliminary enjoin enforcement from POLICE and AGENT 'S harassment.

b.      For this Court to permanently enjoy enforcement from POLICE and AGENT'S harassment.

c.      For an award of such damages as are authorized by law;

d.      For an award pursuant to 42 U.S.C. § 1988 of all reasonable cost and attorneys' fees incurred by the pro se Plaintiff in defending his Constitutional rights.

5.      For a trial by jury on any issue that should not be resolved by the Court as a matter of law; and

6.    For such other and further relief as the Court may deem just and equitable.

## COUNT 2.  RETALIATION AGAINST ELIAS (LOU) ABUSAID JR., UNDER FIRST, FIFTH, NINTH AND FOURTEENTH AMENDMENTS 42 U.S.C.§ 1983 FOR AUGUST 30, 2003

124.  Plaintiff incorporates by reference the allegations in Paragraphs 1- 119 above as set forth verbatim herein.

125.  Defendant, POLICE officers retaliated against Plaintiff by issuing him citations / tickets that are without merit, harassing the Plaintiff, his employee's and patrons in retaliation against the Plaintiff for reporting Officer T. Mayo's misconduct to his supervisor. As well as the pattern of the POLICE designed to cause economic chaos and financial disaster to the Plaintiff's business involving the presents of the POLICE at frequent and continuing intervals. POLICE cars parked in the driveways and parking lot(Mr. Blumenfeld's)and around the immediate vicinity of the Plaintiff's business for hours at a time, stopping and checking the identification of patrons and employees exiting or seeking to enter the business. See. P.A.B., Inc., Et Al  v. Edward Stack,  440 F. Supp.939 (1977) and Bee See Books, Inc. v. Leary , 291, F. Supp 622 (So. Dist N.Y. 1968).

126.  In addition, pursuant to 42 U.S.C. Section 1983, Plaintiff is entitled to compensation for damages including punitive damages as well. See. Smith v. Wade, 103 S. Ct. 1625 (1983). Due to suffering he has sustained as a result of the unconsti-

tutional acts of the POLICE and in pursuant to 42 U.S. C. Section 1988,reimbursement

for all reasonable costs, including attorney's fees, of bringing this lawsuit to assert

his and others' constitutional rights.

COUNT 3.   RETALIATION AGAINST ELIAS (LOU) ABUSAID JR.,
UNDER FIRST, FIFTH, NINTH AND FOURTEENTH AMENDMENTS
42 U.S.C.§ 1983 FOR AUGUST 31, 2003

127.  Plaintiff incorporates by reference the allegations in Paragraphs 1- 119

above as set forth verbatim herein.

128.   Defendant, POLICE officers retaliated against Plaintiff by issuing him

citations / tickets that are without merit, harassing the Plaintiff, his employee's and

patrons in retaliation against the Plaintiff for reporting Officer T. Mayo's misconduct

to his supervisor. As well as the pattern of the  POLICE designed to cause economic

chaos and financial disaster to the Plaintiff's business involving the presents of the

POLICE at frequent and continuing intervals. POLICE cars parked in the driveways

and parking lot(Mr. Blumenfeld's)and around the immediate vicinity of the Plaintiff's

business for hours at a time, stopping and checking the identification of patrons and

employees exiting or seeking to enter the business. See. P.A.B., Inc., Et Al  v. Edward

 Stack,   440 F. Supp.939 (1977) and Bee See Books, Inc. v. Leary , 291, F. Supp 622

(So. Dist N.Y. 1968).

129.  In addition, pursuant to 42 U.S.C. Section 1983, Plaintiff is entitled  to
-25-

compensation for damages including punitive damages as well. See. Smith v. Wade,

103 S. Ct. 1625 (1983). Due to suffering he has sustained as a result of the unconsti-

tutional acts of the POLICE and in pursuant to 42 U.S. C. Section 1988,reimbursement

for all reasonable costs, including attorney's fees, of bringing this lawsuit to assert

his and others' constitutional rights.

COUNT 4.   RETALIATION AGAINST ELIAS (LOU) ABUSAID JR.,
UNDER FIRST, FIFTH, NINTH AND FOURTEENTH AMENDMENTS
42 U.S.C.§ 1983 FOR SEPTEMBER 6, 2003

130.   Plaintiff incorporates by reference the allegations in Paragraphs 1- 119

above as set forth verbatim herein.

131.   Defendant, POLICE officers retaliated against Plaintiff by issuing him

citations / tickets that are without merit, harassing the Plaintiff, his employee's and

patrons in retaliation against the Plaintiff for reporting Officer T. Mayo's misconduct

to his supervisor. As well as the pattern of the  POLICE designed to cause economic

chaos and financial disaster to the Plaintiff's business involving the presents of the

POLICE at frequent and continuing intervals. POLICE cars parked in the driveways

and parking lot(Mr. Blumenfeld's)and around the immediate vicinity of the Plaintiff's

business for hours at a time, stopping and checking the identification of patrons and

employees exiting or seeking to enter the business. See. P.A.B., Inc., Et Al  v. Edward

Stack,  440 F. Supp.939 (1977) and Bee See Books, Inc. v. Leary, 291, F. Supp 622
-26-

(So. Dist N.Y. 1968).

132.   In addition, pursuant to 42 U.S.C. Section 1983, Plaintiff is entitled to compensation for damages including punitive damages as well. See. Smith v. Wade, 103 S. Ct. 1625 (1983). Due to suffering he has sustained as a result of the unconstitutional acts of the POLICE and in pursuant to 42 U.S. C. Section 1988,reimbursement for all reasonable costs, including attorney's fees, of bringing this lawsuit to assert his and others' constitutional rights.

### COUNT 5.   RETALIATION AGAINST ELIAS (LOU) ABUSAID JR., UNDER FIRST, FIFTH, NINTH AND FOURTEENTH AMENDMENTS 42 U.S.C.§ 1983 FOR SEPTEMBER 7, 2003

133.   Plaintiff incorporates by reference the allegations in Paragraphs 1- 119 above as set forth verbatim herein.

134.   Defendant, POLICE officers retaliated against Plaintiff by issuing him citations / tickets that are without merit, harassing the Plaintiff, his employee's and patrons in retaliation against the Plaintiff for reporting Officer T. Mayo's misconduct to his supervisor. As well as the pattern of the  POLICE designed to cause economic chaos and financial disaster to the Plaintiff's business involving the presents of the POLICE at frequent and continuing intervals. POLICE cars parked in the driveways and parking lot(Mr. Blumenfeld's)and around the immediate vicinity of the Plaintiff's business for hours at a time, stopping and checking the identification of patrons and

-27-

employees exiting or seeking to enter the business. See. P.A.B., Inc., Et Al   v.

 Edward  Stack,    440 F. Supp.939 (1977) and Bee See Books, Inc. v. Leary , 291,

F. Supp 622 (So. Dist N.Y. 1968).

135.   In addition, pursuant to 42 U.S.C. Section 1983, Plaintiff is entitled  to

compensation for damages including punitive damages as well.See. Smith v. Wade,

103 S. Ct. 1625 (1983). Due to suffering he has sustained as a result of the unconsti-

tutional acts of the POLICE and in pursuant to 42 U.S. C. Section 1988,reimbursement

for all reasonable costs, including attorney's fees, of bringing this lawsuit to assert

his and others' constitutional rights.

## COUNT 6.  5 U.S.C. SECTION 702 CLAIM AGAINST DEFENDANT DRUG ENFORCEMENT ADMINISTRATOR FOR NOVEMBER 9, 2003

136.  Plaintiff incorporates  by reference the allegations in Paragraphs 1- 119

above as set forth verbatim herein.

137.   Defendant's POLICE and AGENTS seen using ELI BLUMENFELDS

parking  lot  as  a  meeting  place  conspired  to  retaliated  against  Plaintiff:

138.  Specifically, the Defendants:

a.   POLICE and AGENTS where observed on November 8, 2003, at about 8:45 p.m. Officer Leavy was parked on Mr. Blumenfelds lot when soonafter both AGENTS drove up in their green Mercedes Benz. Officer Leavy  greeted the AGENTS at that time. Both parties talked and the AGENTS then drove away.

-28-

b.  On November 9, 2003, AGENTS began asking Plaintiff's customers where they could purchase illegal control substances, many of the customers wishing not to be harassed by unknown persons inquiring where they may be able to purchase illegal control substances began to leave the Plaintiff's business.

c.  At about 5:30 a.m. AGENTS becoming very frustrate that they still where not able to obtain any control substances, changed there tactics and began a more aggressive and illegal method to purchase control substances. At which time they approached Mr. FOLSON and informed him that they knew his was on state probation and that would arrest him, "causing him to violate that probation" unless he obtained controlled substances on their behalf. Mr. FOLSON understandable being disturbed that the AGENTS where extorting him with the loss of liberty in exchange to commit/force him a felony by attempting to seek and search for alleged control substances in the Plaintiff's business.

d.  Mr. FOLSON immediately reported the AGENTS unlawful actions to one of Plaintiffs employee's, whom reported the complaint to the Plaintiff. Plaintiff not knowing at the time if Mr. FOLSON allegations contained any merit. Order two of his bouncers to seek and search for unknown subjects, so that the Plaintiff could question the subject about the allegation and determined if he should report them to law-enforcement  simply banned them from the business or dismiss the allegations as false.

e.  At about 5:40 a.m. two POLICE officers entered the Plaintiff's business without warrant nor consent and where followed by the AGENTS, whom instructed the Officer to arrest Mr. FOLSON.

f.  Mr. FOLSON was quickly wisked away by the POLICE.

g.  AGENTS then demanded to know what Mr. FOLSON  reported to the Plaintiff's employee. Plaintiff instructed his employee to  disclosed the above described  paragraphs (e) and (d). AGENT in the red sweatshirt angrily denied Mr. FOLSON'S allegation against him. AGENTS then left.

h.   At 6:30 a.m. four uniformed POLICE officers returned to the Plaintiff's

business and demanded to see the employee that Mr. FOLSON spoke too. That employee met the Officers, at which time Officer T. Mayo ordered the employee to surrender his identification to him, at which time he wrote the employee's licence information on a small white pad and then asked the employee for his phone number. Officer Mark W. Vasquez was also present. No explanation was given to the employee.

i.   POLICE and AGENTS where acting under the full color of the law.

***WHEREFORE***   Plaintiff maintains a prayer for relief for a declaratory judgement and permanent injunction, having declare that the actions taken against the Plaintiff's, business, employee(s) and patrons by all of the present day Defendants was proper and a violation of Plaintiff constitutional rights, and further declare that the patterns of harassment created by the Defendant's at issue in this instant action was a violation of the Fourteenth Amendment and issue a permanent injunction against the creation of any future patterns of harassment to cause economic kaos to this Plaintiff, such as those described in the pleadings.

## VII.   DEMAND FOR JURY TRIAL

Plaintiff demands jury trial for all issues so triable.

## VIII.   REQUEST FOR RELIEF

Wherefore, Plaintiff has been damaged by the Defendants as a result of each violation as alleged in the courts above and request compensatory, punitive and exemplary damages and all other relief that is just and equitable, including costs and

attorney fees as provided by 42 U.S.C. § 1988 and otherwise.

Respectfully submitted,

By: _____

Elias (Lou) Abusaid Jr.,
11212 Elmfield Drive
Tampa, FL  33625
(813) 961-3260
(813) 963-7280 Telecopier
*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been furnished to :

Kirby C. Rainsberger, Assistant City Attorney, Tampa Police Department, 411 N.

Franklin St, 10th Floor, Tampa, FL  33602 and Ken Lawson, Esq, United States

Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, on

this 14 th day of May, 2004, by first class mail.

_____

Elias (Lou) Abusaid Jr.,
11212 Elmfield Drive
Tampa, Florida 33625
(813) 961-3260
(813) 963-7280 Telecopier
*Pro Se Plaintiff*

-31-
